OPINION OF THE COURT
Michael Curci, J.
The People move to resubmit the matter at bar to another Grand Jury (CPL 190.75 [3]).
In deciding the People’s application, the court considered *769 the People’s motion papers, defendant’s opposition papers and the minutes of the proceedings before the Grand Jury.
The facts as adduced before the original Grand Jury are as follows:
On January 28, 1993 at approximately 12:45 p.m., Donna Shapiro was crossing Avenue Z at the intersection of Nostrand Avenue when a blue Datsun automobile driven by defendant struck her. The impact caused Ms. Shapiro’s body to be tossed into the air and land on the pavement. A witness at the scene found her unconscious and bleeding from her nose, ears, mouth and from the side of her head.
A witness testified that defendant’s vehicle proceeded through a red light just prior to striking Ms. Shapiro.
The first police officer to arrive at the scene, Officer Belizario, indicated that upon his arrival and observation of defendant, he detected the odor of alcohol on defendant’s breath and observed that defendant’s activities indicated alcohol consumption. Officer Poveromo, the second officer, made similar observations. In a statement to Poveromo, defendant admitted to consuming two 12-ounce cans of beer between 11:00 a.m. and 11:30 a.m. the morning of the accident, and having had only one hour of sleep the night before.
Shortly after the incident, at approximately 2:20 p.m., Police Officer Lippert of the Highway Unit administered a "breathalyzer test” to defendant. The result of the breathalyzer was a .13 of 1% blood-alcohol content, in excess of the legal limit for operating a motor vehicle.
Police Officer Richard Pepe of the New York State Police Department Accident Investigation Unit tested the skid marks made by defendant’s automobile and determined that he was traveling no less than 40 miles per hour upon a thoroughfare where the speed limit is 30 miles per hour.
An examination by Officer Pepe of the interior of defendant’s vehicle yielded two beer cans (one empty, the other unopened) along with a bottle of rum which had been previously opened and whose outside was wet with alcohol.
Defendant testified before the Grand Jury and indicated that he was traveling northbound on Nostrand Avenue and was proceeding through the intersection of Nostrand and Avenue Z. Defendant testified that the traffic signal was green and that a woman crossed against the light. Defendant further indicated that he applied the brakes and insisted that the woman "accidentally walked into the car.”
*770 Defendant confirmed that he consumed two 12-ounce beers approximately 45 minutes before the accident but denied knowledge of the empty beer can and open bottle of rum found in the vehicle. Defendant insisted he was traveling at a speed of 30 to 35 miles per hour at the time of the accident.
A medical report concerning injuries suffered by Donna Shapiro was read into the record before the Grand Jury. The report indicated that Shapiro suffered "multiple fractures to her ribs, legs, and blood from both ears.”
On February 5, 1993 the Grand Jury was charged on the law by the prosecutrix. Assault in the second degree, vehicular assault in the second degree, reckless endangerment in the second degree and two counts of operating a motor vehicle while intoxicated (DWI) were submitted for the Grand Jury’s consideration. The Grand Jury voted no true bill as to all but the two DWI counts, and directed the prosecutrix to file an information as to those counts.
On March 4, 1993, Donna Shapiro died, allegedly as a result of the injuries suffered on January 28, 1993 after having been struck by defendant’s car.
RESUBMISSION
When charges presented to a Grand Jury are dismissed by the Grand Jury, they may not be resubmitted unless the court, in its discretion, authorizes the People to resubmit the charges to the same or another Grand Jury (see, People v Martin, 71 AD2d 928; CPL 190.75 [3]).
Where resubmission is requested by the People, the court should not automatically accede to such request unless new evidence has been discovered since the prior submission or there is some irregularity or impropriety at the Grand Jury (see, People v Dykes, 86 AD2d 191, 195; People v Martin, 71 AD2d 928, supra).
As observed by the Second Department in Dykes (supra, at 195): "In a very real sense the Grand Jury may be said to represent the 'common sense’ or consensus of the entire community. (See People v Neidhart, 35 Misc 191, 192.) It is empowered, indeed required, to dismiss a charge that a designated person committed a crime if the evidence before it is not legally sufficient to establish that such person committed such crime or other offense, or it 'is not satisfied’ that there is reasonable cause to believe that such person committed such crime or any other offense. (CPL 190.75, subd 1.) The dismissal *771 of a charge by the Grand Jurors after a full hearing, such as took place in this case, must be taken as establishing as a fact that the evidence was not of sufficient credible worth to warrant a prosecution and should not be presented to a petit jury. Such a finding by the Grand Jury is justly entitled to great weight and prosecutors and Judges are not privileged to substitute their judgment for that of the Grand Jury. Indeed, a determination by the Grand Jury that the evidence before it does not warrant an indictment should end the matter and there should not be a resubmission unless it appears, for example, that new evidence has been discovered since the former submission; that the Grand Jury failed to give the case a complete and impartial investigation; or that there is a basis for believing that the Grand Jury otherwise acted in an irregular manner. (See People v Martin, 71 AD2d 928, supra; People v Groh, 97 Misc 2d 894; People v Dziegiel, 140 Misc 145, 146; People v Neidhart, supra)” (emphasis added).
There is no claim asserted that the Grand Jury failed to give the case a complete and impartial investigation or acted in an "irregular manner”.
The "new” evidence put forth by the People in support of their application for resubmission consists simply of the death of the victim Donna Shapiro from the injuries suffered after having been struck by defendant’s automobile.
Although defendant does not identify it as such in his papers, he opposes resubmission by arguing that the first Grand Jury’s determination regarding the assault and reckless endangerment charges should be given preclusive effect and prevent the People from relitigating the issues. In essence, defendant is urging the court to apply the doctrine of collateral estoppel or "issue preclusion” to prevent the People from relitigating the issues presented to and rejected by the first Grand Jury.
A "Grand Jury’s decision not to return an indictment on the ground of insufficient legal evidence does not contain the finality requisite to the application of the doctrine of collateral estoppel” (People ex rel. Pickett v Ruffo, 96 AD2d 128, 130, citing Matter of McGrath v Gold, 36 NY2d 406). This is so because a Grand Jury’s decision not to indict is not a final determination that the acts alleged did not in fact occur (supra). Indeed, the Legislature, by authorizing re-presentatian, felt that the People should not be precluded by a prior Grand Jury determination.
*772 Moreover, while, in general, the doctrine of collateral estoppel is more acute in civil matters, it is less relevant in criminal prosecutions where the "preeminent concern is to reach the correct result” (People v Aguilera, 82 NY2d 23, 30 [emphasis added]; People v Goodman, 69 NY2d 32, 37; People v Sailor, 65 NY2d 224, 228, cert denied 474 US 982).
Nonetheless, while not binding, the court, in exercising its discretion, is guided by the general principles espoused by the doctrine of issue preclusion in determining whether the fact of the victim’s death is sufficient to overcome the "great weight” to be accorded to a decision of the Grand Jury not to indict (see, People v Dykes, supra, at 195).
Although it is difficult for the court to speculate as to the reasons for the Grand Jury’s decision not to indict defendant for anything but DWI, an examination of the Grand Jury minutes in light of the crimes charged is instructive.
For the Grand Jury to have found "legally sufficient” evidence to indict (People v Calbud, Inc., 49 NY2d 389, 394; CPL 190.65[1]) for the crime of assault in the second degree, it must have found that defendant "recklessly cous[ed] serious physical injury to another by means of a deadly weapon or a dangerous instrument” (Penal Law § 120.05 [4]). An indictment for vehicular assault in the second degree (Penal Law § 120.03) would entail a finding by the Grand Jury that defendant, with criminal negligence, caused serious physical injury to another by operating a motor vehicle while intoxicated. To establish the elements of reckless endangerment in the second degree, the People would have to put forth "legally sufficient” evidence that defendant "recklessly engage[d] in conduct which creates a substantial risk of serious physical injury to another person” (Penal Law § 120.20; emphasis added).
The fact that the Grand Jury voted no true bill on the count of reckless endangerment, which requires conduct which merely "creates a substantial risk of serious physical injury” and not actual serious physical injury, effectively rules out the possibility that the Grand Jury voted not to indict because of the lack of evidence of serious physical injury.*
*773 It cannot be seriously maintained that the Grand Jury found that defendant, striking Ms. Shapiro with his car, driven while he was legally intoxicated, did not at least create a risk that serious injury would result. This is particularly so in light of the evidence presented to the Grand Jury of actual serious physical injury suffered.
In order then, to have voted no true bill with respect to the charge of reckless endangerment, the Grand Jury would have necessarily found that defendant did not act recklessly (see, People v Cruciani, 36 NY2d 304; Penal Law § 15.05 [3]).
Since the Grand Jury found that defendant was intoxicated when he struck Ms. Shapiro, in order to have rejected all but the DWI counts, the Grand Jury would necessarily have credited defendant’s testimony that he was not speeding nor "ran” the red light. This would have entailed a concomitant rejection of eyewitness testimony that defendant went through a red light, and "expert” testimony that defendant exceeded the speed limit by at least 10 miles per hour at the time of the collision.
This is so because proof of intoxication, in and of itself, is insufficient to establish that defendant acted recklessly or with criminal negligence (see, People v Bast, 19 NY2d 813, 815). The People are required to establish that in addition to a violation of Vehicle and Traffic Law § 1192 (DWI), defendant was speeding, disobeyed a traffic signal or some other Vehicle and Traffic Law violation, or that his intoxication caused him to strike decedent with his vehicle.
A review of the minutes leads to the inescapable conclusion that the Grand Jury based its decision not to indict on the insufficiency of the evidence of a "reckless mental state”. This also explains the "no true bill” regarding the "reckless” and "criminal negligent” assaults committed. The death of the "victim” in no way enhances this "culpable mental state”.
Just as the People cannot resubmit simply because they do not agree with or are otherwise dissatisfied with the Grand Jury’s findings (People v Dykes, 86 AD2d 191, 195, supra), the court should not substitute its judgment for that of the Grand Jury unless a "legitimate reason” to upset its finding is put forth by the People (People v Washington, 125 AD2d 967, 968-969; People v Dykes, supra).
The Grand Jury having rejected that defendant acted "recklessly” or with "criminal negligence”, the People failed to show that the death of the victim in and of itself would have *774 changed the result. The court refuses to upset the "great weight” to be accorded a Grand Jury’s decision in light of the evidence presented and instructions given to the Grand Jury.
The court would also note on what appears to be an illogical aspect of the law. CPL 40.20 (2) (d) states that:
"2. A person may not be separately prosecuted for two offenses based upon the same act or criminal transaction unless: * * *
"(d) One of the offenses is assault or some other offense resulting in physical injury to a person, and the other offense is one of homicide based upon the death of such person from the same physical injury, and such death occurs after a prosecution for the assault or other non-homicide offense”.
This CPL section first states the general rule as regards the constitutional prohibition against double jeopardy "for the same offense” (US Const 5th Amend; NY Const, art I, § 6). CPL 40.20 (2) (d) then states one of the exceptions to the rule. This being the "well established Diaz exception to constitutionally prescribed double jeopardy (Diaz v. U.S., 32 S.Ct. 250, 223 U.S. 442, 56 L.Ed.2d 500 [1912]). As a simple example, D is prosecuted for assault upon V and subsequently V dies of the injuries inflicted. D may now be prosecuted for homicide despite the previous assault prosecution. It might be noted that the Court of Appeals has agreed that 'there are sound policy reasons’ for this exception. People v. Rivera, 60 N.Y.2d 110, 115, 468 N.Y.S.2d 601, 456 N.E.2d 492 (1983).” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 40.20, at 310.)
This exception does not apply to the facts and circumstances of the motion at bar. A Grand Jury presentation is not a proceeding constituting a previous prosecution. Therefore, CPL 40.20 does not apply. (See, People v Pascowitch, 158 App Div 812 [1913]; People ex rel. Burns v Flaherty, 119 App Div 462 [1907]; People v Besser, 207 Misc 692 [1955].)
It is interesting that if a victim dies after a Grand Jury votes "no true bill” on an assault, that under certain factual circumstances, the People could not resubmit to a Grand Jury. However, if a victim dies after a full jury verdict of not guilty on an assault, then the People may try him again for homicide. A Grand Jury presentation requires a lower degree of proof than at a trial. After trial, a jail sentence is possible. One would think logically, that the law would make it more *775 difficult to allow a second trial, than it would to allow a second presentation to the Grand Jury. But, under certain circumstances, such is not the law, but the opposite may be the law.
It appears that the instant Grand Jury may have weighed the evidence incorrectly. The court cannot alter their decision. There is no such law available. If there was, we would have considered allowing the People to resubmit. Something analogous to "non obstante veredicto”: "notwithstanding the verdict,” is not applicable, nor available, to be applied by a court to a Grand Jury’s "no true bill.” Isn’t it interesting, therefore, that the court has less authority over the Grand Jury than over a trial verdict in this regard. The last element of vehicular assault in the second degree is that such serious physical injury was caused by the operation of a motor vehicle in violation of subdivision (2), (3) or (4) of section 1192 of the Vehicle and Traffic Law. Vehicle and Traffic Law § 1192 (2), (3) and (4) relates to operating a motor vehicle while under the influence of alcohol or drugs. It is clear that this last element mentioned above was proven at the Grand Jury. The Grand Jury voted out a "true bill” as regards two counts of operating a motor vehicle while under the influence of alcohol. When a Grand Jury decides a case and there is no fraud, no new evidence, and within the bounds of the law, a Judge or a court is not permitted to override a "no true bill” finding by the Grand Jury.
On the last court date of May 20, 1994, the court used a chart that would help explain to the parties and, for that matter itself, its decision. The chart graphically showed a comparison of the crimes that were charged and voted by the original Grand Jury: assault in the second degree, "no true bill”; vehicular assault in the second degree, "no true bill”; reckless endangerment in the second degree, "no true bill”; and two counts of operating a motor vehicle while under the influence of alcohol, "true bill”; compared to and vis-á-vis the one count the People had requested they be permitted to resubmit, namely, criminally negligent homicide, Penal Law § 125.10. Examining the elements of the crimes listed on the chart, it was vividly clear that the most closely related count to criminally negligent homicide (Penal Law § 125.10) is the crime of vehicular assault in the second degree (Penal Law § 120.03). The first element of both of those counts that must be proven by sufficient credible evidence at a Grand Jury or on trial beyond a reasonable doubt is an element of criminal *776 negligence. This element is obviously identical and common to both crimes that we compared. The second element for vehicular assault in the second degree is "causing serious physical injury.” The comparable element necessary for criminally negligent homicide (Penal Law § 125.10) demands, "causpng] the death of another person.” Didactically speaking, the "causpng] the death of another person” is, in a narrow and strictly legal-clinical sense, a terminal serious physical injury. Those elements for these purposes are therefore, practically and virtually, identical. The gravamental elements of both of these counts are so operationally similar, as to, in a practical sense, make them tantamount to being treated alike for these type purposes. Neither element, if proven to any and all degrees for these purposes and in this context, detracts from nor enhances the other.
From an analysis of the Grand Jury testimony, the failure of proof was not at all in the area of injuries, but in the area of the defendant’s culpable mental state. It is obvious that the Grand Jury relied heavily, and gave great weight to the defendant’s Grand Jury testimony when he swore he did not pass the light and was not speeding, and only drank two cans of beer.
The court has searched the law and its soul and may have found it desirable to have allowed a resubmission. Our hearts go out to the survivors of the innocent deceased. We remind them that there was nothing the court could do about this. It was a Grand Jury decision on the facts that must stand. We remind the survivors that the Grand Jury decision of "no true bill” of the indictment is not finally determinative of any civil action. We make no such ruling pertaining thereto. We note the Grand Jury did return a "true bill” as regards two counts of driving while intoxicated.
The People’s motion to resubmit is denied.

 Of course, the victim’s death would, theoretically, enhance the People’s case insofar as the extent the victim’s actual injuries are concerned since death is simply a more grave form of serious physical injury (see, e.g., People v McDavis, 97 AD2d 302). It would not, however, likely effect the risk created that such injury would occur.