OPINION OF THE COURT
Ronald D. Hollie, J.
Before this court is the defendant’s motion seeking dismissal for failure to establish probable cause for the arrest of the defendant pursuant to Dunaway v New York (442 US 200 [1979]), a motion for the suppression of the handgun recovered from the home of the defendant pursuant to Mapp v Ohio (367 US 643 [1961]), and a motion for the suppression of the alleged statement made by the defendant pursuant to People v Huntley (15 NY2d 72 [1965]). A hearing was conducted with regard to the defendant’s motions and at the conclusion of the hearing an additional motion was made by the prosecution to preclude the defendant from re-litigating the issue of probable cause to arrest the defendant. The prosecution argues that, as a result of a prior ruling, the doctrine of collateral estoppel applies and that the prior ruling is the law of the case. The following is a decision on the defendant’s motions and a determination as to *689 whether the prior ruling on probable cause to arrest the defendant precludes the defendant and this court from re-litigating that issue.
Background
On August 11, 2005, the defendant was arrested outside his home in Queens County and charged with a homicide that was committed in Queens County on June 10, 2004. Shortly after he was taken into custody, the police officers recovered a 9 millimeter handgun and charged the defendant with criminal possession of a weapon. It was later discovered that the handgun recovered on August 11, 2005 had no connection to the June 2004 homicide.
The prosecution decided to proceed with these two cases separately. Each was prosecuted before a different supreme court justice. In each of these cases, the defendant requested a pretrial hearing challenging whether there was probable cause to arrest the defendant on August 11, 2005. A “Dunaway” hearing was ordered in each of those cases. Because the prosecutor decided to first proceed with the homicide case, the Dunaway hearing in the homicide case was conducted before any pretrial proceedings in the criminal possession of a weapon case. The court conducting the homicide case determined that there was probable cause to arrest the defendant on August 11, 2005 and denied suppression.
After the homicide case had ended, the prosecution proceeded to litigate the criminal possession of a weapon case. It is that criminal possession of a weapon case which is before this court.
When the pretrial hearings were completed in this criminal possession of a weapon case, the prosecutor argued against suppression and additionally argued that the defendant should be precluded from re-litigating probable cause to arrest the defendant on August 11, 2005. In their arguments, both the defendant and the prosecutor incorporated by reference that prior proceeding in Queens County in which defendant was indicted for a homicide that was committed on June 10, 2004. This court has essentially been asked to take judicial notice of the record of that prior proceeding to the limited extent of determining what, if any, effect the decision on the Dunaway issue in the homicide case has on a probable cause to arrest determination in this criminal possession of a weapon case. This court will take judicial notice of those undisputed portions of the court record related to that homicide case (see People v Byrd, 57 AD3d 442 *690 [1st Dept 2008]; Ptasznik v Schultz, 247 AD2d 197 [2d Dept 1998]).
It must first be determined if the prior decision on the Dun-away issue in the homicide case is binding on this defendant, or this court, in this criminal possession of a weapon case. Once that determination is made, this court can determine whether the prosecution has met its burden of going forward in this Dunaway hearing.
The Homicide Case
On June 10, 2004, shots were fired in the confines of the 105th Precinct in Queens County and, as a result, one person was killed and another injured. Detectives Christopher Drew and Richard Bohn assisted in the investigation of that homicide and the injuries to the surviving complainant. During that investigation, the surviving complainant viewed various photos of individuals in the New York City Police Department computerized photo system. On April 25, 2005, the complainant picked the photo of Fitzgerald Roc as the person who shot him and presented that information to Drew and Bohn. The detectives continued their investigation now possessing a photo of a suspect. On August 11, 2005, the defendant was arrested with the assistance of Regional Fugitive Task Force detectives who responded to defendant’s home address in Queens County. The defendant was arrested while outside of his home. Investigating Detectives Drew and Bohn were not present at the scene of the defendant’s arrest. On August 12, 2005, Drew and Bohn conducted a lineup and the subject of that lineup was Fitzgerald Roc. Fitzgerald Roc was positively identified. The defendant was subsequently indicted for murder in the second degree and other related charges. A Dunaway/Wade hearing was conducted on the homicide case during which Detectives Drew and Bohn testified. In a decision, dated January 16, 2008, Queens Supreme Court Justice Hanophy determined that there was probable cause to arrest the defendant on August 11, 2005 and the defendant’s motion to suppress the identification of defendant was denied. The prosecution had ballistically determined that the 9 millimeter handgun allegedly recovered from the defendant’s dresser drawer was not used in the homicide.
The homicide case ultimately ended with a motion by the prosecutor to dismiss and seal the case. The defendant was not convicted or sentenced in that homicide case.
*691 Collateral Estoppel
Collateral estoppel, or “issue preclusion,” is a common-law doctrine rooted in civil litigation that, when applied, prevents a party from re-litigating an issue decided against it in a prior proceeding. This principle applies to criminal as well as civil cases. Underlying the collateral estoppel doctrine is a desire to conserve the time and resources of the court and the parties and to avoid possible inconsistent determinations (People v Aguilera, 82 NY2d 23 [1993]).
As collateral estoppel has evolved in our criminal jurisprudence, the formal prerequisites are (1) identity of parties; (2) identity of issues; (3) final and valid prior judgment; and (4) a full and fair opportunity to litigate the prior determination (People v Aguilera, 82 NY2d at 29-30; People v Goodman, 69 NY2d 32 [1986]).
The party seeking the benefit of collateral estoppel has the initial burden to establish the existence of each of the four prerequisites (Maiello v Kirchner, 98 AD3d 481 [2d Dept 2012]). Collateral estoppel is only invocable if each of the four prerequisites are established.
In criminal cases, this doctrine has been applied to prevent an “ultimate” or an “evidentiary” fact, necessarily determined in one case, from being re-ligitated in a subsequent case (People v Acevedo, 69 NY2d 478 [1987]). It has also been applied to preclude issues decided in a pretrial suppression hearing conducted in one case, from being re-litigated in a subsequent case (People v Carroll, 200 AD2d 630 [2d Dept 1994]; People v Guy, 121 AD2d 741 [2d Dept 1986]).
In criminal cases, collateral estoppel has been applied to preclude the prosecutor in some cases (Acevedo, 69 NY2d 478 [1987]) and preclude a defendant in others (Carroll, 200 AD2d 630 [1994]).
In this matter, the first proceeding that the defendant participated in was the homicide case. That pretrial suppression hearing was decided against the defendant and the case was ultimately dismissed by the prosecution. Of the four prerequisites necessary to apply the doctrine of collateral estoppel to preclusive effect, there is no dispute that (1) identity of parties; (2) identity of issues; and (3) a full and fair opportunity to litigate the pretrial suppression issues in the homicide case has been established by the prosecutor. It is the defense position that the fourth prerequisite, to wit — final and valid prior judg *692 ment, has not and cannot be established in this case. This court agrees.
Under New York Criminal Procedure Law, a judgment is comprised of a conviction and the sentence imposed thereon (see CPL 1.20 [15]). In New York criminal practice, requisite “finality” is attained when there is a judgment of conviction and it is elementary that there is no judgment until sentence has been imposed (People v Sanders, 71 NY2d 946 [1988]; Maiello v Kirchner, 98 AD3d at 482; People v Evans, 72 AD2d 751 [2d Dept 1979]).
The prosecution cites Carroll (200 AD2d 630 [1994]) as authority for this court to preclude the defendant in the prosecution of the gun case, from re-litigating the “Dunaway” issue decided in the homicide case. That appellate decision determined that the collateral estoppel doctrine was appropriately invoked against the defendant to bar re-litigation in Nassau County of exactly the same issue previously determined in Suffolk County. While the four prong prerequisite test wasn’t fully detailed in that appellate decision, that four prong test is the standard by which the use of the collateral estoppel doctrine is applied in any criminal case (Aguilera, 89 NY2d at 29-30). In ruling that the doctrine of collateral estoppel was appropriately invoked, that appellate court necessarily resolved that there was a valid and final judgment in Suffolk County prior to the preclusion order in Nassau County.
In the Carroll case, the decision of the Suffolk County Court to deny defendant’s motion to suppress became final and binding on the defendant as soon as he was convicted and sentenced in that Suffolk County Court (200 AD2d at 631). It is for that reason that the doctrine of collateral estoppel was applied and did preclude defendant from re-litigating the Dunaway issue in the subsequent Nassau County proceedings.
Here, the dismissal of the related homicide case on motion by the prosecutor constituted a resolution of that homicide case but it did not provide the requisite finality to invoke collateral estoppel. That disposition was not “sufficiently final” to be given collateral estoppel effect (Matter of McGrath v Gold, 36 NY2d 406 [1975]; People v Howard, 152 AD2d 325 [2d Dept 1989]; People v Moore, 142 AD2d 895 [3d Dept 1988]). Therefore the motion by the prosecution to preclude the defendant from re-litigating the “Dunaway” issue that had been decided in the homicide case, on January 16, 2008, is denied.
*693 Law of the Case
The law of the case doctrine is part of a larger family of kindred concepts which includes res judicata (claim preclusion) and collateral estoppel (issue preclusion). These doctrines, broadly speaking, are designed to limit re-litigation of issues (People v Evans, 94 NY2d 499 [2000]). Claim preclusion and issue preclusion address judicial determinations made in a prior litigation. Law of the case doctrine addresses the potential preclusive effect of judicial determinations made by courts of coordinate jurisdiction, before final judgment, in the course of a single litigation. It applies to various stages of the same litigation (McGrath v Gold, 36 NY2d at 413).
The doctrine of the law of the case has been appropriately applied in civil cases as well as criminal cases (People v Evans, 94 NY2d 499 [2000]).
Before the application of law of the case doctrine can be given preclusive effect, the court must (1) examine whether the prior judicial determination is of a nature to be given binding effect and (2) assess whether the prior judicial determination was made in the course of a single litigation or different litigations (id.).
The Dunaway issue decided in the homicide case is of a nature that it could have preclusive effect under the doctrine of law of the case (People v Nieves, 67 NY2d 125 [1986]; People v Broome, 151 AD2d 995 [4th Dept 1989]; People v Leon, 264 AD2d 784 [2d Dept 1999]). Applying the law of the case doctrine to the case at bar, the Dunaway issue decided in the homicide case would only have binding effect on this court of coordinate jurisdiction if that decision was made in the course of a single litigation.
In the case at bar, there are two separate litigations between these parties and therefore this court is not bound by the Dunaway determination in the homicide case.
Having determined that the doctrines of collateral estoppel and law of the case do not preclude re-litigation of the Dunaway issue surrounding the defendant’s arrest, this court can now consider the evidence presented to this court during the Dun-away hearing conducted by this court.
Suppression Hearings in the Criminal Possession of a Weapon Case
The People have the burden of going forward to show the legality of the police conduct leading to the defendant’s arrest *694 (People v Moses, 32 AD3d 866 [2d Dept 2006]; People v Wise, 46 NY2d 321 [1978]). The evidence, relative to the circumstances of the defendant’s arrest, was presented through the testimony of Detective Robert Rodriquez. He was part of the apprehension team and he assisted the apprehension team in locating the defendant. At the point in time that the defendant was arrested, it was he who ordered the defendant to the ground at gunpoint and handcuffed the defendant. He had no part in the investigation of the underlying crime. Moreover, at the time he arrested the defendant, the arresting officer had no contact with a civilian witness who had information sufficient to support a reasonable belief that an offense was committed by this defendant (People v Read, 74 AD3d 1245 [2d Dept 2010]). At the time he arrested the defendant, the arresting officer had not received information from a fellow officer who had information sufficient to support a reasonable belief that an offense was committed by this defendant. (People v Powell, 101 AD3d 756 [2d Dept 2012]; People v Skinner, 220 AD2d 350 [1st Dept 1995]; People v Shulman, 6 NY3d 1 [2005].) The first time the arresting officer had contact with the case detective was after the defendant was arrested. This court therefore concludes that the People have not met their burden of going forward, in this proceeding, to show the legality of the police conduct culminating in the arrest of Fitzgerald Roc on August 11, 2005. (People v James, 72 AD3d 844 [2010]; People v Moses, 32 AD3d at 868.)
In this case, a handgun was recovered and the defendant thereafter allegedly made a statement. Having determined that the arrest was unlawful, this court must now resolve whether the handgun and the statement were obtained by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint (Segura v United States, 468 US 796 [1984]; People v Arnau, 58 NY2d 27 [1982]; People v Johnson, 79 AD3d 905 [2d Dept 2010]). Where a gun is discovered as a consequence of a defendant’s illegal arrest, it must be suppressed, as well as any statements made by the defendant. (People v Milaski, 62 NY2d 147 [1984]; People v Thomas, 32 AD3d 869 [2d Dept 2006].)
In this matter the gun was discovered as a consequence of the defendant’s arrest, and therefore both the gun and the statement are suppressed.