■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VILMA BAUTISTA, Appellant. [18 NYS3d 47]—

Judgment, Supreme Court, New York County (Renee A. White, J.), rendered January 13, 2014, convicting defendant, after a jury trial, of criminal tax fraud in the first degree, offering a false instrument for filing in the first degree and conspiracy in the fourth degree, and sentencing her to concurrent terms of 2 to 6 years, 1 to 3 years, and one year, respectively, and restitution in the amount of $3,557,620, unanimously modified, on the law, to the extent of vacating the conspiracy conviction and remanding for a new trial on that count if the People be so advised, and for further proceedings pursuant to CPL 460.50 (5) as to the remaining convictions, and otherwise affirmed.

Defendant and others were charged with conspiracy to commit grand larceny in the first and second degrees, criminal possession of stolen property in the first and second degrees, and criminal tax fraud, based on allegations that they agreed to possess and sell four paintings they did not own, retain the proceeds, and conceal the proceeds from government authorities. Defendant, among others, completed the sale of one of those paintings for $32 million in 2010. The paintings had been acquired by Imelda Marcos decades earlier, when she was the First Lady of the Philippines, and allegedly should have been forfeited to the people of the Philippines. Defendant spent and gave away millions of dollars of the proceeds but failed to report the sale on her 2010 New York State tax return as required by law, thereby evading payment of more than $1 million in state taxes.

The trial court erred in reading or paraphrasing approximately eight sentences from an order of the Supreme Court of the Republic of the Philippines in a proceeding commenced by the Republic against Imelda Marcos and others, where the Philippine court granted summary judgment in favor of the petition, and ordered that more than $658 million held mostly in Swiss bank accounts be forfeited to the Republic. Only one sentence read by the court to the jury purported to state the law of the Philippines, namely Philippine Republic Act No. 1379, which provides that any property acquired by a public official during his or her term of public service that is "manifestly out of proportion" to the official's public salary and any other lawful income "shall be presumed prima facie to have been unlawfully acquired." The remaining portions of the opinion read to the jury consisted of fact findings, and thus were not proper subjects of judicial notice pursuant to CPLR 4511 (b) (*see Hamilton v Miller*, 23 NY3d 592, 603 [2014]).

The court implicitly applied collateral estoppel, which was inapplicable even under the standards governing civil cases, since defendant was not a party to the Philippine case and had no opportunity to litigate the issues therein; moreover, collateral estoppel should be applied with more caution in criminal cases than in civil (*see People v Aguilera*, 82 NY2d 23, 29-30 [1993]). The court further erred in paraphrasing the opinion without clarifying the rebuttable nature of the presumption under the Philippines law, and that error was compounded by the court's ruling precluding defense counsel from addressing that point in summation. We have considered and rejected the People's arguments that defendant's contentions regarding the Philippine opinion are unpreserved. However, we find that while the error was not harmless as to the conspiracy count, it was harmless as to the other counts, since there is no significant probability that defendant would have been acquitted of the latter two counts in the absence of this error (*see People v Crimmins*, 36 NY2d 230, 242 [1975]). Accordingly, we vacate only the conspiracy conviction.

The court properly admitted emails exchanged between two of defendant's alleged coconspirators, her nephews, under the coconspirator exception to the hearsay rule. Contrary to defendant's argument, the People made a prima facie showing of conspiracy "without recourse to the declarations sought to be introduced" (*People v Bac Tran*, 80 NY2d 170, 179 [1992]). There was testimony indicating that one of defendant's nephews extensively participated in the painting sale at issue, and defendant sent $100,000 of the proceeds to him. Defendant also sent $5 million of the proceeds to the other nephew. Although defendant notes that the court relied in part on the emails at issue, the messages were properly considered to demonstrate the nephews' conduct, such as offering or arranging to offer certain prices and forwarding photographs of paintings to potential buyers, rather than for the truth of the messages (*see People v Salko*, 47 NY2d 230, 239 [1979]).

Under the state-of-mind exception to the hearsay rule (*see People v Matthews*, 16 AD3d 135, 137-138 [1st Dept 2005], *lv denied* 4 NY3d 888 [2005]), the court properly admitted news articles and other documents, recovered in a search of defendant's home, concerning the Philippine government's efforts to recover artworks allegedly misappropriated by the Marcos administration. The circumstances warranted a reasonable inference that defendant was aware of these documents and their contents (*see People v Sutherland*, 154 NY 345, 352 [1897]), establishing her motive to conceal the sale of a paint-

ing allegedly given to her by the former First Lady. Thus, the evidence tended to rebut the defense argument that defendant's failure to report her income from the sale on her tax returns was not necessarily intentional. Contrary to defendant's argument, the People were not required to establish that defendant adopted the contents of the documents. Defendant's constitutional challenges to the admission of those documents are unpreserved, and we decline to review them in the interest of justice. As an alternative holding, we find them unavailing. Moreover, we find that any error in the admission of these materials was harmless.

We agree with the court's evaluation, after an in camera review, that the notes on an interview with an alleged coconspirator were not *Brady* material. Moreover, there is no reasonable possibility that they would have affected the outcome of the trial (*see People v Fuentes*, 12 NY3d 259, 263 [2009]), since the alleged coconspirator presumably would have invoked his Fifth Amendment right against self-incrimination if called by the defense.

Defendant was not deprived of a fair trial by the prosecutor's argument in summation that she was told by a tax attorney that she needed to declare her income from the sale of a painting. The tax attorney did not testify that he had directly so advised defendant, but rather testified that he met with defendant and one of her associates to discuss tax issues concerning the sale, and that the tax attorney advised the associate two weeks later of defendant's obligation to report the income. It was reasonable to infer that this information was conveyed to defendant. In any event, any impropriety in the prosecutor's statement did not rise to the level of reversible error (*see People v D'Alessandro*, 184 AD2d 114 [1st Dept 1992], *lv denied* 81 NY2d 884 [1993]).

Defendant did not preserve her contentions that the court failed to follow the proper procedure in adjudicating her *Batson* motion, and that she was deprived of a fair trial by the prosecutor's allegedly excessive interruptions of defense counsel's opening statement and summation, and we decline to review them in the interest of justice. As an alternative holding, we find no basis for reversal. Concur—Gonzalez, P.J., Mazzarelli, Richter and Manzanet-Daniels, JJ.