[66 NYS3d 682]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DUONE MORRISON, Respondent.

Third Department, November 30, 2017

APPEARANCES OF COUNSEL

*P. David Soares, District Attorney*, Albany (*Steven M. Sharp* of counsel), for appellant.

*Carolyn B. George*, Albany, for respondent.

## OPINION OF THE COURT

MULVEY, J.

Appeal from an order of the County Court of Albany County (Herrick, J.), entered February 24, 2014, which granted defendant's motion to dismiss the indictment.

In August 2007, defendant was charged by indictment with, among other crimes, attempted murder in the second degree based on the accusation that, with the intent to cause the death of the victim, defendant shot the victim in the head and body on June 10, 2007. Following a jury trial, defendant was convicted of attempted murder in the second degree and another crime, and that conviction was upheld on appeal (*People v Morrison*, 71 AD3d 1228, 1230 [2010], *lv denied* 15 NY3d 754 [2010]). Thereafter, the victim died and defendant was indicted and charged with murder in the second degree stemming from the victim's death (*see* CPL 40.20 [2] [d]). In obtaining the second indictment (hereinafter the indictment), the People advised the grand jury that, "as a matter of law," it had previously been determined that defendant had shot the victim in the head and body and had done so with the intent to cause his death. The People instructed the grand jurors that defendant's intent was "not an issue for you to decide" and that they "must accept that the People have established this element." The People did not present any evidence to the grand jury related to the circumstances that led to the shooting or the identity of the shooter, submitting evidence solely on causation.

Defendant thereafter moved to dismiss the indictment, arguing that, among other things, the evidence was legally insufficient to support the indictment (*see* CPL 210.20 [1] [b]) and, more specifically, that the People could not employ collateral estoppel against him in this manner. Finding that collateral estoppel did not bar defendant's challenge to the legal sufficiency of the evidence, County Court granted defendant's motion and dismissed the indictment. The People now appeal, arguing that collateral estoppel was properly employed against defendant in securing the indictment.

Initially, "[t]he right to indictment by a [g]rand [j]ury before being tried for an infamous crime is explicitly guaranteed by [NY Constitution, art I, § 6]" (*People v Iannone*, 45 NY2d 589, 593 [1978]), which provides that "[n]o person shall be held to answer for a[n] . . . infamous crime . . . , unless on indictment of a grand jury" (NY Const, art I, § 6). This protective provision is intended to curb excessive prosecutorial authority by requiring that, "before an individual may be publicly accused of [a] crime and put to the onerous task of defending himself [or herself] from such accusations, the [People] must convince a [g]rand [j]ury composed of the accused's peers that there exists sufficient evidence and legal reason to believe the accused guilty" (*People v Iannone*, 45 NY2d at 594). A grand jury properly carries out its function "when it has issued an indictment upon evidence that is legally sufficient to establish that the accused committed a crime" (*People v Calbud, Inc.*, 49 NY2d 389, 394 [1980]; *see* CPL 190.65 [1]).

Collateral estoppel, the doctrine on which the People relied in obtaining the indictment, "is a common-law doctrine rooted in civil litigation" (*Matter of Juan C. v Cortines*, 89 NY2d 659, 668 [1997] [internal quotation marks and citation omitted]). The Court of Appeals has recognized that collateral estoppel also "applies in criminal prosecutions 'to bar [the People's] relitigation of issues necessarily resolved *in [a] defendant's favor* at an earlier trial' " (*People v Hilton*, 95 NY2d 950, 952 [2000] [emphasis added], quoting *People v Acevedo*, 69 NY2d 478, 484-485 [1987]). The Court has emphasized that collateral estoppel is "not to be liberally applied in criminal cases" (*People v Hilton*, 95 NY2d at 952), as there are "[s]trong policy considerations [that] militate against [it]" (*People v Fagan*, 66 NY2d 815, 816 [1985]). Further, collateral estoppel does not apply in "the same way" in criminal cases as it does in civil cases (*People v Aguilera*, 82 NY2d 23, 29 [1993] [internal quotation marks and cita-

tion omitted]). To that end, "[h]istorically, courts have tended to favor defendants in the application of collateral estoppel because of concerns for due process, double jeopardy, the right to a jury trial, fundamental fairness and preventing undue harassment" (*id.* at 30-31; *see People v Goodman*, 69 NY2d 32, 38-40 [1986]; *People v Acevedo*, 69 NY2d at 484-487). While the doctrine has been employed to preclude the People from relitigating facts previously decided in a defendant's favor in a subsequent prosecution (*see People v Acevedo*, 69 NY2d at 480, 489), the Court has left open the question of whether, if ever, collateral estoppel can appropriately be used by the People *against* a criminal defendant and, to our knowledge, has never approved of an instance of such offensive use of the doctrine against an accused (*see People v Aguilera*, 82 NY2d at 29-31).

Moreover, the Court of Appeals has acknowledged important differences between the overarching goals of criminal and civil litigation that bear on the propriety of permitting prosecutorial reliance upon collateral estoppel.

> "[I]n civil actions, where the primary societal interest is in the peaceful, expeditious and impartial settlement of disputes, [courts] might accept even an occasional erroneous result as preclusive to serve other significant societal interests. By contrast, in criminal prosecutions, where [a] defendant's liberty interest is at stake, the preeminent concern is to reach the correct result" (*People v Aguilera*, 82 NY2d at 30 [citations omitted]).

That is, "[t]he correct determination of guilt or innocence is paramount in criminal cases" (*People v Fagan*, 66 NY2d at 816). Significantly, on both occasions when the Court considered whether it was proper for a trial court to collaterally estop a defendant from contesting a prior adverse suppression ruling rendered in an earlier, separate prosecution, the Court found such estoppel to be improper (*see People v Aguilera*, 82 NY2d at 32-33; *People v Plevy*, 52 NY2d 58, 64-66 [1980]).

While the question presented by this appeal is a novel one, we note that, even if it were constitutional for the People to offensively use collateral estoppel in a criminal prosecution and all of the elements of that doctrine were deemed satisfied in this matter, it would not be appropriate under these circumstances. We reach this conclusion mindful that "[c]ollateral estoppel is a flexible doctrine [that is] not to be applied automatically just because its formal prerequisites are met"

(*People v Fagan*, 66 NY2d at 816; *see People v Aguilera*, 82 NY2d at 30; *see also Ashe v Swenson*, 397 US 436, 444 [1970]). Applying collateral estoppel in the strategic, prosecutorial manner attempted here—in an effort to dispense with proof of the elements of a class A-1 felony that carries a potential life sentence (*see* Penal Law §§ 70.00 [2] [a]; 125.25)—undermines, if not violates, fundamental principles of due process and the presumption of innocence, among others (*see People v Aguilera*, 82 NY2d at 30-31). These countervailing constitutional protections " 'outweigh the otherwise sound reasons for preventing repetitive litigation' " in this manner (*People v Aguilera*, 82 NY2d at 30, quoting *People v Berkowitz*, 50 NY2d 333, 344 [1980]; *see People v Plevy*, 52 NY2d at 64; *see also United States v Pelullo*, 14 F3d 881, 893 [3d Cir 1994]).

While the People argue that their offensive use of collateral estoppel is fair play, in that had defendant been acquitted of attempted murder, he would defensively rely on collateral estoppel principles to argue against a subsequent murder trial, this analysis overlooks the obvious and critical difference between an accused's defensive use of this doctrine and a prosecutor's strategic use of it against an accused. An accused's defensive invocation of this doctrine implicates and protects constitutional rights—to a jury trial, to present a defense, to due process and to not be placed twice in jeopardy, among others—whereas the People's affirmative use is for matters of expediency and economy and lacks a constitutional imperative (*see State v Ingenito*, 87 NJ 204, 209, 432 A2d 912, 915 [1981]; *see also Ashe v Swenson*, 397 US 436 at 445-446).* A California intermediate appellate court that confronted this identical issue over 20 years ago similarly concluded that this strategic use of collateral estoppel was inconsistent with due process, noting that "the pursuit of judicial economy and efficiency may never be used to deny a defendant . . . a fair trial," and that instructing a jury that a murder trial was limited to causation created an impermissible "gravitational pull towards a guilty verdict" (*Gutierrez v Superior Ct.*, 24 Cal App 4th 153, 169-170,

---

* The conclusion that the People's use of collateral estoppel is rarely, if ever, permitted is consistent with decisions of other states' high courts (*see State v Allen*, 423 Md 208, 210, 31 A3d 476, 478 [2011]; *People v Goss*, 446 Mich 587, 590-591, 596-600, 521 NW2d 312, 312, 315-317 [1994]; *State v Johnson*, 134 NH 498, 500-504, 594 A2d 1288, 1290-1293 [1991]; *State v Ingenito*, 87 NJ 204, 209, 432 A2d 912, 914-915 [1981]; *see also United States v Dixon*, 509 US 688, 710 n 15 [1993]; *Simpson v Florida*, 403 US 384, 386 [1971]).

29 Cal Rptr 2d 376, 386-387 [2d Dist 1994] [internal quotation marks and citations omitted], *cert denied* 514 US 1049 [1995]). We agree.

Moreover, nothing in the language of NY Constitution, article I, § 6 indicates that the right of an accused to have a grand jury consider the evidence against him or her can be modified for the purposes of efficiency or public policy (*see United States v Pelullo*, 14 F3d at 895). The Court of Appeals has recognized that collateral estoppel principles are not superior to a criminal defendant's right to choose whether to testify in his or her own defense (*see People v Plevy*, 52 NY2d at 66). Likewise, we find unpersuasive the contention that principles of collateral estoppel are superior to the constitutional right of the accused to have a grand jury determine whether there is reasonable cause to conclude that he or she is guilty of a crime (*see* NY Const, art I, § 6; CPL 70.10 [1]).

Even if there were no constitutional impediment to the People's use of collateral estoppel in a grand jury proceeding, by statute, a defendant is entitled to dismissal of an indictment in the event that the evidence before a grand jury was not legally sufficient (*see* CPL 210.20 [1] [b]). Legally sufficient evidence is defined as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL 70.10 [1]). The Legislature has given no indication that it intended the doctrine of collateral estoppel to be used to supplant the grand jury's role in determining whether there is reasonable cause to believe that an accused has committed an offense, and it has not taken measures to codify collateral estoppel as an exception to these statutory requirements. Given that the People here did not put forth any evidence before the grand jury that defendant shot the victim with the intention of causing his death, County Court correctly determined that the evidence was legally insufficient to support the charge of murder in the second degree (*see* CPL 70.10 [1]; Penal Law § 125.25 [1]). Given the foregoing, the court properly granted defendant's motion to dismiss the indictment.

PETERS, P.J., GARRY, AARONS and PRITZKER, JJ., concur.

Ordered that the order is affirmed.