**Alexander MOSKOVITS, Plaintiff,**

v.

**DRUG ENFORCEMENT ADMIN., et al., Defendants.**

**Civ. A. No. 90–0398 (RCL).**

United States District Court,
District of Columbia.

June 26, 1991.

As Corrected Sept. 11, 1991.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

On June 14, 1987, Eurospec Imports (Imports) bought a 1985 Ferrari Testarossa on consignment from Zolton Moskovits, the plaintiff's father and legal representative, for $85,000. The plaintiff claims the Drug Enforcement Administration (DEA) and David Barkett (Barkett), Senior Attorney for the DEA, wrongfully persuaded Imports not to pay the $85,000 for the car from June 14, 1987 to July 13, 1988, at which time the DEA seized the $85,000 from the car dealer. On July 26, 1988, the plaintiff sent a claim of ownership and a petition for remission or mitigation for the $85,000 to the DEA in Philadelphia, Pennsylvania. This petition did not state the grounds for remission or mitigation; however, the plaintiff did complain of the deprivation of property. On August 17, 1988, a notice of seizure was sent via certified mail to the plaintiff and other interested parties. A notice of seizure was also published in the September 7, 1988 edition of *USA Today*.

On September 9, 1988, the plaintiff filed an affidavit of indigency with the clerk of the United States District Court for the Eastern District of Pennsylvania. A copy of this affidavit was served on the United States Attorney's office in Pennsylvania on the same date, however a copy of this affidavit was not filed with the DEA. At this point, the plaintiff apparently believed he had properly served the federal government and all of its agencies with a notice of indigency. On October 24, 1988, a declaration of forfeiture was issued noting that a seizure notice had been published and that no claim for the property had been filed within the required 20 days.

In a letter dated December 27, 1988, the DEA informed the plaintiff that the July 26, 1988 claim of ownership was defective because the claim was not accompanied by a bond or an affidavit of indigency. The letter also informed the plaintiff that he had to file an affidavit to proceed in forma pauperis in lieu of a cost bond and obtain records of his prison accounts from an authorized officer. The plaintiff was allowed 15 days from his receipt of the December 27, 1988 letter to comply with the request. The DEA sent this letter to the plaintiff's place of pretrial detention in Pennsylvania. This letter was received on December 31, 1988, by an individual whose signature is not legible. The DEA originally argued that the time started to run when the letter was received at the Pennsylvania prison. However, the plaintiff had been transferred from the prison in Pennsylvania in September, 1988 to an Alabama prison and did not receive notice of the defect until January 6, 1989.

The plaintiff then wrote the DEA a letter dated January 6, 1989. The plaintiff explained that the DEA would not receive a completed affidavit within the 15 days because of the time required to verify his prison accounts. The plaintiff completed and mailed the affidavit of indigency and the prison accounts to the DEA on January 17, 1989. The DEA received the affidavits January 24, 1989, three days after the 15 day deadline from plaintiff's admitted January 6, 1989, receipt of the DEA's letter of December 27, 1988. On February 13, 1989, the DEA informed the plaintiff that his claim of ownership and petition for remission or mitigation of the forfeited property was denied because the 15 day time requirement was not met. On March 2, 1989, the plaintiff sent another letter to the DEA expressing his disagreement with the DEA's decision to proceed administratively. Subsequently, the DEA treated this letter as a petition for remission or mitigation of forfeiture. On November 7, 1989, Barkett, on behalf of the DEA denied this petition.

The plaintiff requests that this court enjoin the DEA and Barkett from administratively forfeiting the $85,000. The plaintiff also claims that the DEA lacks jurisdiction to act on the claim of ownership and petition for remission or mitigation and re-

quests that the DEA forward all the paperwork to the United States Attorney for the Southern District of Florida, where the property was seized, to initiate a judicial condemnation proceeding.

## DISCUSSION

▮ Actual notice will not substitute for technically correct service under Fed. R.Civ.P. 4. If service is not properly made, the court has no jurisdiction to render a personal judgment against a defendant. *Sieg v. Karnes*, 693 F.2d 803 (8th Cir.1982). In *Sieg*, the defendant, a resident of Iowa, injured the plaintiff, a resident of South Dakota, in a car accident. The last day before the three year statute of limitations was to run, the plaintiff's counsel filed a complaint with the court and personally served the defendant in Iowa. South Dakota's long-arm statute forbade this type of service. The court held that it did not have jurisdiction over the defendant because service was not valid, even though the defendant had actual notice. *Id.* at 807. Similarly, Barkett was not personally served, although service was made on the United States Attorney's office. It is irrelevant that Barkett may have had notice of the complaint against him personally. The claim against Barkett personally was not properly served upon him. Actual notice will not substitute for technically correct service under Fed.R.Civ.P. 4. As the court held in *Sieg*, this court does not have jurisdiction to render a personal judgment against Barkett because service was not properly made on Barkett. Although the court could now direct the United States Marshal to effectuate proper service on Barkett, it will not do so since it appears that the court would not, in any event, have personal jurisdiction over Barkett.

▮ A court may exercise personal jurisdiction over a nonresident defendant only if there is minimum contact between the defendant and the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The plaintiff has failed to show that this court can properly exercise jurisdiction under the District of Columbia long-arm stat-ute, D.C.Code Ann. sec. 13–423 (1981). The District of Columbia long-arm statute requires the act and the effect on the party, or injury must take place in the District of Columbia. *Id.* Here, Barkett had no contacts with the District of Columbia. The search warrant was issued in the Eastern District of Pennsylvania. Barkett is a resident of the Commonwealth of Virginia and he is employed by the DEA in Arlington, Virginia. The injuries to the plaintiff all occurred either in Pennsylvania or in Florida. There is no indication that Barkett subjected himself to the benefits of the District of Columbia law or that he was present in the District of Columbia during the injury to the plaintiff. Because Barkett had no contacts with the District of Columbia and did nothing to injure or effect the plaintiff in the District of Columbia, this court has no personal jurisdiction over Barkett, and his motion to dismiss will be granted.

The pleadings of a pro se plaintiff are held to a less stringent standard than pleadings drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). In *Haines*, a state prison inmate brought an action against the governor of Illinois and other state officials to recover damages for injuries and deprivation of his civil rights. The court held that a pro se inmate should have the opportunity to offer evidence to support his claim because pleadings are held to a less stringent standard than pleadings drafted by an attorney. *Id.* at 521, 92 S.Ct. at 596.

▮ Similarly, Moskovits is pro se inmate in a federal prison in Alabama. The complaint is a preliminary pleading and does not have to allege all facts and claims to be valid. The complaint and other pleadings are designed to provide fair notice to each party of the claims or defenses asserted against the opposing party and the grounds for its assertion. Moskovits' complaint, although not well drafted, was sufficient to notify the DEA of the claims against it and the basis of the claims. Even the defendant admits that the plaintiff does allege a deprivation of constitu-

tional rights. (*See* defendant's motion to dismiss at p. 3). Therefore, the plaintiff should have the opportunity to prove his claims.

■ An incarcerated pro se petitioner's notice of appeal is "filed" at the moment the prisoner delivers the notice to the prison authorities. *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). In *Houston*, a prisoner had been denied relief on a pro se petition for habeas corpus relief. On the 27th day of a 30 day deadline for noting an appeal, the prisoner delivered the notice of appeal to the prison authorities to mail to the District Court. Because the prisoner lacked the necessary funds, the prison authorities refused his requests to certify the notice of proof that the petition was mailed on the day in question and to send the notice air mail. The court stamped the notice "filed" 31 days after the habeas judgment, one day after the expiration of the 30 day filing period.

■ The court held that a pro se prisoner's control over the possession of his notice ceases as soon as he hands it over to the only public officials to whom he has access, the prison authorities. *Id.* at 276, 108 S.Ct. at 2385. Although *Houston* involved a filing of a habeas corpus appeal, the analysis of the court applies to Moskovits and his filing of a timely affidavit with the DEA. Moskovits received notice from the DEA that his claim of ownership was defective on January 6, 1989. He had 15 days to correct the defect by filing an affidavit in forma pauperis and obtain records of his prison accounts. Moskovits completed the DEA's request and sent it to the DEA by giving it to prison officials to mail on January 17, 1989. The DEA received the affidavit January 24, 1989, three days after the 15 day deadline. The pro se prisoner is different from other litigants. Prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeals and to assure that they are received in a timely manner. The prisoner cannot travel to the court or agency to see that their documents are filed correctly or easily establish the date the

agency receives them. *Id.* at 271, 108 S.Ct. at 2382.

Other litigants may choose to trust the mail to deliver their documents to the court or agency, but only the pro se prisoner is forced to do so by his incarceration. Additionally, if other litigants choose to use the mail, they can place the notice directly into the hands of the United States Postal Service and follow up on its progress by calling the court or agency to determine whether the notice has been received. Also, if something does go wrong with the mail, they can personally deliver the document at the last moment. Pro se prisoners cannot take any of these precautions, nor do Moskovits, or most other pro se litigants, have lawyers who can take these precautions for them. *Id.*

Furthermore, the pro se prisoner is forced to trust the prison authorities to mail his documents in a timely manner. The prisoner has no control over the authorities and may never know if the documents were filed in a timely manner. Unskilled in law, unaided by counsel, and unable to leave prison, his control over the processing of his documents ceases as soon as he hands it over to the prison authorities. *Id.* Moskovits received notice on January 6, 1989; he gave the letter to prison officials on January 17, 1989; this is within the 15 day deadline.

■ In applying the arbitrary and capricious standard of 5 U.S.C.S. sec. 706(2)(A), the reviewing court must examine the record that is before the agency and decide whether the findings and decisions the agency reached are reasonable. *Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). In *State Farm*, insurance companies petitioned the court to review an order of the National Highway Traffic Safety Administration (Administration). The Administration rescinded a passive restraint requirement because they concluded that requiring passive restraints in automobiles would not result in an increase in the use of the restraints. *Id.* at 30, 103 S.Ct. at 2860.

■ The court held that the administrator's action was arbitrary and capricious. *Id.* at 31, 103 S.Ct. at 2861. The court stated that the agency must examine the relevant data and articulate a satisfactory explanation for its action. *Id.* The reviewing court must consider whether the agency's decision was based on relevant factors and whether there was a clear error of judgment. *Id.*

The DEA acted arbitrarily and capriciously because they misdirected Moskovits' mail. The misdirected mail limited Moskovits' attempt to comply with the DEA's request. The DEA initially claimed that Moskovits' petition was late because the December 27, 1988 letter was received by an unknown person on December 31, 1988, thus, the deadline expired on January 15, 1989. However, Moskovits did not receive the December 27, 1988 letter until January 6, 1989. In any event, counting 15 days from his receipt, he timely tendered his reply when he gave it to prison authorities to mail.

Any delay in Moskovits' letter to the DEA is partly, the DEA's responsibility. According to *State Farm,* the court must consider whether the DEA's action was based on relevant factors and whether there was an error in judgment. *Id.* Arguably, the reason for the 15 day limit is relevant to assure a speedy resolution of the matter. However, Moskovits should not be penalized for the DEA's error or for the delay in mailing once he tendered the letter to the prison authorities. Clearly, the DEA inhibited Moskovits' attempt to meet the 15 day deadline. The DEA did not offer any explanation for their error, nor can they reasonably argue that Moskovits did not meet the deadline.

21 C.F.R. sec. 1316.76(b) (1984) states in part that the filing of a claim and the posting of a bond does not entitle the claimant to possession of the property, however, it does stop the administrative forfeiture proceedings. This court holds that the DEA received a valid affidavit to proceed in forma pauperis in lieu of a cost bond when Moskovits delivered the affidavit to the prison authorities for mailing. At this point, under 21 C.F.R. sec. 1316.76(b) (1984) the DEA was prohibited from administratively forfeiting the $85,000.

21 C.F.R. sec. 1316.78 (1984) states in part, "If a claim and satisfactory bond have been received for property ... the DEA Asset Forfeiture Unit shall transmit a description of the property and a complete statement of facts and circumstances surrounding the seizure to the United States Attorney for the judicial district in which the proceeding for forfeiture is sought for the purpose of instituting condemnation proceedings".

■ Once the DEA received Moskovits' affidavit, under 21 C.F.R. sec. 1316.78 (1984), the DEA was required to transmit the relevant information to the United States Attorney for the judicial district which the proceeding for forfeiture is sought. Therefore, the DEA's treatment of Moskovits' March 2, 1989 letter as a petition for remission or mitigation of forfeiture was inappropriate. The March 2, 1989 letter should have been forwarded to the United States Attorney for the judicial district in which the proceeding for forfeiture is sought. Furthermore, under 21 C.F.R. sec. 1316.81 (1984), the DEA is required to inform Moskovits of the transfer to the United States Attorney for the judicial district which the proceeding for forfeiture is sought.

Therefore, this court will grant the plaintiff's motion for summary judgment. The DEA will be enjoined from administratively forfeiting Moskovits' $85,000 under 21 C.F.R. sec. 1316.76(b) (1984). Furthermore, the DEA will be ordered to forward all the paperwork to the United States Attorney for the Southern District of Florida where the property was seized pursuant to 21 C.F.R. sec. 1316.78 to institute a judicial condemnation proceeding.

A separate order shall issue this date.

## ORDER AND JUDGMENT

This case comes before the court on plaintiff's Motion for an Injunction, plaintiff's Motion for Summary Judgment, and defendant's Motion to Dismiss.

Upon consideration of all the filings and the evidentiary record submitted in support of and in opposition to the motions, and for the reasons set forth in an accompanying Memorandum Opinion, it is hereby

ORDERED, that the motion of defendant David Barkett to dismiss for lack of personal jurisdiction is GRANTED, and defendant Barkett is hereby DISMISSED, and it is further

ORDERED, that the court, liberally construing plaintiff's pro se complaint for injunctive relief, hereby substitutes, *sua sponte*, the Chief, Asset Forfeiture Unit, Drug Enforcement Administration, as defendant, in place of the Drug Enforcement Administration (DEA), and hereby DENIES the motion to dismiss filed by DEA, which is construed as a motion to dismiss the substituted defendant, and it is further

ORDERED, that the plaintiff's motions for summary judgment and for an injunction against the Chief, Asset Forfeiture Unit, Drug Enforcement Administration, are GRANTED. Judgment is hereby entered in favor of the plaintiff and against the defendant, Chief, Asset Forfeiture Unit, Drug Enforcement Administration. The defendant is enjoined from administratively forfeiting the $85,000 proceeds from the sale of the 1985 Ferrari Testarossa and ordered to forward all paperwork to the United States Attorney for the Southern District of Florida for the institution of judicial condemnation proceedings in the ordinary mode prescribed by law.

SO ORDERED.