Jesus AGUILERA, Plaintiff,

v.

FEDERAL BUREAU OF
INVESTIGATION,
Defendant.

Civil Action No. 94–2723 (EGS).

United States District Court,
District of Columbia.

Jan. 31, 1996.

. Ann M. Begley, David Charney Vladeck, Public Citizen Litigation Group, Washington, DC, for plaintiff.

Charles Francis Flynn, Office of the United States Attorney, Washington, DC, for defendant.

## OPINION AND ORDER

SULLIVAN, District Judge. ·

Before the Court are plaintiff's motion for a preliminary injunction[1] to compel expedited processing of his requests for documents and indexes, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1996), and defendant's motion for a stay of the proceedings. Upon consideration of the pleadings, the applicable law, oral arguments, and the record herein, the Court concludes that plaintiff's motion should be granted. This opinion shall constitute the Court's Findings of Fact and Conclusions of Law as

1. Pursuant to plaintiff's unopposed request, the Court will consolidate this motion with the trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2).

required by Federal Rule of Civil Procedure 52(a).

## I.

### Factual and Procedural Background

Plaintiff, Jesus Aguilera, contends that he was a confidential informant to the defendant-Federal Bureau of Investigation (FBI), during the early 1980's.[2] According to Aguilera, his ability to provide information pertaining to a man named "Armando Lopez" (Armando), who allegedly was buying and selling illegal arms, formed the basis for Aguilera's relationship with the FBI. After a period of time, however, when the FBI was unable to substantiate any of his information, Aguilera's relationship with the FBI was severed.

On February 16, 1982, four months after Aguilera's relationship with the FBI allegedly terminated, he was arrested in New York and interrogated about two murders, one which took place in the Bronx in August 1981, and another which occurred in Manhattan in September 1981. During the twenty hours of interrogation, Aguilera allegedly confessed to both murders. According to his signed confession, Aguilera stated that "Armando" had ordered him to participate in the murders. Specifically, Aguilera stated that "Armando" forced Aguilera to carry out the Manhattan murder by threatening him with a gun.

In 1985, a New York County Supreme Court jury found Aguilera guilty of second-degree murder for the murder which took place in Manhattan;[3] Aguilera was sentenced to twenty-five-years-to-life.[4] Subse-

quently, the New York Court of Appeals remanded Aguilera's case to the trial court on the grounds that he had been denied a pretrial hearing on his motion to suppress statements. *People v. Aguilera,* 82 N.Y.2d 23, 603 N.Y.S.2d 392, 398, 623 N.E.2d 519, 525 (1993). Presently, the Supreme Court of New York County is poised to hold an evidentiary hearing to determine whether statements allegedly made by Aguilera during his police interrogation in 1982 should be suppressed.

In 1994, Aguilera was diagnosed as a paranoid schizophrenic. He now intends to challenge the statements allegedly made by him during the 1982 police interrogation on the grounds that, due to his mental incapacity then, he was particularly susceptible to police interrogation, and thus, to making false confessions. Aguilera recognizes, however, that his recent diagnosis of paranoid schizophrenia cannot serve as a basis to establish his mental capacity in 1982, when he allegedly made the statements inculpating himself in the Manhattan murder. Hence, in an effort to establish his mental incapacity at the time he was interrogated by the police, Aguilera seeks documents solely within the control of the FBI during the time he was serving as an informant.

On April 11, 1994, in preparation for the suppression hearing, Aguilera served the FBI with a subpoena, issued by the Supreme Court of New York County, requesting all documents relating to his role as a confidential FBI informant. The FBI treated the subpoena as a declassification request and released two documents. The first released document was a copy of another document

---

**2.** At the hearing on the motion, defendant's attorney, in response to the Court's question as to whether the government disputed Aguilera's assertion that he served as a confidential informant, replied that "nor has it been conceded." Motion Hearing Transcript (Tr.) at 28. Government's counsel continued that

> [a]nd so whatever the man's status—he says he was giving information to the FBI, and from what counsel says, the FBI was rejecting it—he doesn't sound like a first-class informant from this side of the spectrum.... For his own reasons, he's happy to have made it public, that he's an informant. The FBI, in most cases, doesn't like to confirm that kind of

thing, for obvious reasons, and hasn't in this particular case. There's no particular reason to.

*Id.*

**3.** This was a retrial after his first trial ended in a hung jury.

**4.** While the Court is aware that Aguilera is also serving a twenty-year-to-life sentence for the 1981 murder committed in the Bronx, and that Aguilera intends to collaterally attack that sentence after the disposition of the present case, this opinion addresses the Manhattan conviction only.

that had previously been released during Aguilera's trial for the Bronx murder. The second document released, dated October 21, 1981, was a copy of a Newark airtel in which the FBI described Aguilera as "highly unreliable and unstable" and discredited his references to "subject"[5] because "these allegations may be the product of his imagination." Both documents released by the FBI referred to two other documents, dated August 28, 1991, and September 1, 1981.[6] On May 27, 1994, plaintiff filed a FOIA request with the FBI requesting all information concerning himself. On June 7, 1994, the FBI responded to the second subpoena issued by the Supreme Court of New York County by stating that "after careful review of instant demand the NYO Legal Unit has determined that neither of the specifically requested Newark teletypes is relevant." Letter from James Roth, Principal Legal Advisor to FBI [hereinafter Roth Letter, June 7, 1994]. Furthermore, Roth stated that the "only relevant FBI document," the October 21, 1981 Newark airtel, had previously been released. Accordingly, the FBI declined to release any further documents.

Thereafter, on July 18, 1994, Aguilera filed FOIA requests with the FBI regional offices in Newark, New Jersey, Little Rock, Arkansas, Miami, Florida, and San Juan, Puerto Rico. He requested expedited processing of each request. On August 18, 1994, the FBI sent a letter to one of Aguilera's trial attorneys; in the letter, the agency claimed that "delays in excess of one year are not uncommon" because of the 11,500 FOIA requests which need processing. Letter from J. Kevin O'Brien, Chief of the Freedom of Information–Privacy Acts Section of Information Resources Division, FBI [hereinafter O'Brien Letter]. On September 9, 1994, Kenneth Finkleman, one of Aguilera's attorneys, spoke with Linda Kloss, a staff member in the Freedom of Information–Privacy Acts Section of the Information Resources Division at the FBI headquarters, about Aguilera's request for an expedited review. In a letter from J. Kevin O'Brien, dated September 13, 1994, the FBI formally denied Aguilera's request for expedition on the grounds that "[b]ased on the information he [Finkleman] furnished, it [the case] does not fall within the guidelines for expedited processing as set forth by the Department of Justice."

On October 11, 1994, Aguilera appealed the FBI's denial of his request to expedite processing to the Department of Justice's Office of Information and Privacy, again outlining his theory of defense and the need for the documents within the control of the FBI. On October 31, 1994, the Office of Information and Privacy denied Aguilera's appeal for expedited processing of his request. In denying Aguilera's appeal, the FBI stated that the agency had considered all relevant factors, including the fact that Aguilera was involved in criminal litigation for which the requested material may be pertinent. Despite this recognition, the agency concluded that Aguilera's case did not merit expedition.

After exhausting his administrative remedies, Aguilera filed a Motion for a Preliminary Injunction in this Court seeking an order compelling the FBI to expedite plaintiff's FOIA request. In opposition to plaintiff's motion, defendants filed a Motion for A Stay of the Proceedings. The Court presided over a hearing on both motions.

## II.

### Discussion

■ Aguilera must satisfy a four-part test to obtain a preliminary injunction. He must demonstrate a substantial likelihood of success on the merits; immediate and irreparable injury absent relief; that the threatened harm to plaintiff substantially outweighs any harm that an injunction might pose to defendant and third parties; and that the injunction sought will serve the public interest. *Washington Metro. Area Transit Comm'n v.*

---

**5.** "Subject" refers to "Armando Lopez." This identification was corroborated by Aguilera, as well as by the appearance of the name "Armando Lopez" on the second document released.

**6.** On June 1, 1994, plaintiff, again through the Supreme Court of New York County, served the FBI with a second subpoena requesting the August 28, 1991, and September 1, 1981 documents.

*Holiday Tours, Inc.*, 559 F.2d .841, 843 (D.C.Cir.1977).

## 1. Likelihood of Success on the Merits

To show a likelihood of success on the merits, the moving party must show that it is likely for that reason to succeed on a claim. *Natural Resources Defense Council v. Lujan*, 768 F.Supp. 870, 884 (D.D.C.1991). Thus, Aguilera must demonstrate that (1) expedition of his request is warranted under FOIA and the Administrative Procedures Act (APA), and (2) under FOIA, he is entitled to the requested documents.

■ Aguilera argues that the FBI's decision to deny expedition of his request should be set aside as arbitrary and capricious. 5 U.S.C. § 706(2)(A). "In applying the arbitrary and capricious standard, a reviewing court must examine the record that is before the agency and decide whether the findings and decisions the agency reache[s] are reasonable." *Moskovits v. DEA*, 774 F.Supp. 649, 653 (D.D.C.1991) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983)). An agency must examine the relevant data and articulate a satisfactory explanation for its decision. *Moskovits*, 774 F.Supp. at 654. The reviewing court must consider whether the agency's decision was based on relevant factors and whether there was a clear error of judgment. *Id.*

In essence, FOIA requires that all requests be processed within ten days, or, under unusual circumstances, twenty days. 5 U.S.C. § 552(a)(6)(A); 5 U.S.C. § 552(a)(6)(B). FOIA, however, also creates an exception from compliance with the above deadlines. "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain

jurisdiction and allow the agency additional time to complete its review of the records." 5 U.S.C. § 552(a)(6)(C).

■ In *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C.Cir.1976), the District of Columbia Circuit addressed the issue of the interpretation of § 552(a)(6)(C). The Court of Appeals noted that "the 'exceptional circumstances' provision was designed and inserted specifically [into the Act] as a safety valve after protests of the administration that the rigid limits of subparagraphs (A) and (B) might prove unworkable." *Open America*, 547 F.2d at 610. After exploring the rationale for the FOIA time limits, and the agencies' concerns about the time limits, the court fashioned what has become commonly known as the exceptional circumstances-due diligence test. Under this test, an agency may be exempted from the time limits of §§ 552(a)(6)(A) and 552(a)(6)(B) if the agency can demonstrate first, that exceptional circumstances exist,[7] and second, that the agency is exercising due diligence [8] in processing FOIA requests.

■ Aguilera's initial FOIA request was filed in May 1994. On the record in this case, the Court is satisfied that the agency has met the exceptional circumstances-due diligence test. First, as the Kloss affidavit states, the FBI has recently been inundated with FOIA requests far in excess of the volume anticipated by Congress, and far in excess of the volume for which the agency is equipped to handle. Kloss Aff. ¶ 18. Approximately 2,095 requests precede the plaintiff's request. *Id.* According to the Kloss affidavit, plaintiff's request will not be processed for 87 months, *id.* ¶ 19; once Aguilera's request is reached, the FBI estimates that the request will take ninety days to process.

> The good faith effort and due diligence of an agency to comply with all lawful demands under the Freedom of Information Act in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown, is compliance with the Act.
> *Id.*

---

7. Exceptional circumstances exist
 when an agency, ... is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A)....
 *Open America*, 547 F.2d at 616.

8. Due diligence is established when

The Kloss affidavit explains that these lengthy delays are due to the increase in FOIA requests over the past several years, the mandatory budget cuts, the volume of administrative appeals, the FBI's increased litigation responsibilities, the Supreme Court's *U.S. Dep't of Justice v. Landano* [9] decision, and the impending release of the FBI files on the assassination of President John F. Kennedy. *Id.* ¶¶ 19–23. The Court is satisfied that the FBI has made a sufficient showing that the agency is exercising due diligence in processing FOIA requests on a first-in, first-out basis.[10]

■ Even though the FBI has satisfied the exceptional circumstances-due diligence test, this Court's inquiry does not end there. *Open America* also recognized that where a requester shows exceptional need or urgency, that particular requester may be given priority over other requesters, thus creating an exception within the exception. *Open America,* 547 F.2d at 615–16. Further, the FBI recognizes three additional grounds for expediting requests: (1) to prevent threats to physical safety; (2) to prevent the loss of substantial due process rights; and (3) to respond to requests for information pertaining to the government's integrity for which there is widespread and exceptional media interest. *See* Memorandum from Richard L. Huff and Daniel Metcalfe to All Department of Justice FOIA/PA Coordinators, February 1, 1994 [hereinafter Huff Memorandum].[11] Thus, the agency's satisfaction of the *Open America* exceptional circumstances-due diligence test is not a complete shield where the FOIA request fits within the exception to 5 U.S.C. § 552(a)(6)(C) carved out by the *Open America* decision.

The FBI claims that Aguilera's case does not demonstrate the exceptional or urgent need that has been found to exist in other criminal cases. For example, in *Cleaver v. Kelley,* 427 F.Supp. 80 (D.D.C.1976),[12] a decision rendered five months after the *Open America* decision, the district court granted the plaintiff's motion for a preliminary injunction and ordered plaintiff's FOIA request expedited because "[the plaintiff] faces criminal prosecution, which in the end could mean his loss of freedom of life, he is confronted with an exceptional need and urgent need to obtain any and all information that could prove exculpatory." *Id.* at 81.

In the same vein, in *Freeman v. United States Dep't of Justice,* No. 92–557 (D.D.C. October 2, 1992)[13], the district court ordered FOIA requests expedited in a pending criminal case. Freeman was facing criminal charges for securities fraud in Virginia and sought expedition of his FOIA request to aid

**9.** 508 U.S. 165, 181, 113 S.Ct. 2014, 2024, 124 L.Ed.2d 84 (1993) (Court held that "the Government is not entitled to presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation.").

**10.** The FBI employs a two-tiered system for distributing requests for assignment. This system requires an examination of the responsive records, including the complexity of the records at issue. As a result of this determination, the request is assigned to either Track One or Track Two for processing. Track One includes those requests involving only a limited number of documents, usually one hundred or less, and requiring a minimal review for exemption claims. On the other hand, Track Two consists of all other cases, generally involving more voluminous requests and/or of a more complex nature. The requests are then processed on a first-in, first-out basis. Plaintiff's request involves 275 documents and, as such, has been assigned to Track Two, where 2,095 requests pre-date his. Kloss Affidavit ¶ 18.

**11.** The first two grounds for expedition are judicially recognized. *See Exner v. FBI,* 443 F.Supp. 1349, 1353 (S.D.Cal.1978); *Cleaver v. Kelley,* 427 F.Supp. 80 (D.D.C.1976); *see also Freeman v. United States Dep't of Justice,* No. 92–557 (D.D.C. Oct. 2, 1992). The Department of Justice recently adopted the third ground for expedition so as to "permit the public to make a prompt and informed assessment of the propriety of the government's actions in exceptional cases." *See* Huff Memorandum.

**12.** In *Cleaver,* "plaintiffs filed a request under [FOIA] seeking all files relating to the activities of Kathleen and Eldridge Cleaver, and further requesting expedited treatment of the matter because of" the pendency of Mr. Cleaver's criminal trial. *Id.* at 80.

**13.** This opinion is listed in the Office of Information and Privacy, U.S. Department of Justice, Freedom of Information Case List (September 1994 Edition) (listing cases of "precedential significance").

in the preparation of his criminal defense. The district judge recognized that "more compelling due process concerns are raised in criminal trials that justify expedition in such cases:" *Id.* at 3–4. The district court went on to hold that requests for expedition should be granted when the moving party can show (1) that [he/she] is facing grave punishment if convicted, and (2) that there is a reason to believe information will be produced to aid in the individual's defense. *Id.* at 4 (citing *Cleaver*, 427 F.Supp. at 81). Moreover, the district court found that the plaintiff was facing grave punishment, had established a reason to believe that the documents would aid in the plaintiff's defense,[14] the request was limited in scope,[15] and the information could not be received through criminal discovery. Accordingly, the court ordered expedition of the plaintiff's FOIA request.

In contrast, in *Billington v. United States Dep't of Justice,* No. 92–462 (D.D.C. July 21, 1992)[16], the district court refused to order expedition of the plaintiff's FOIA request in a criminal case. Ms. Billington sought records from various field offices of the FBI, on behalf of her husband, thirteen other individuals, and five corporations, all of whom were either facing criminal trials in Virginia, or who were challenging their convictions on appeal. Plaintiff's FOIA requests involved, at a minimum, some 29,400 pages of not previously released responsive material. The *Billington* court granted the government's motion for a stay on the grounds that the "plaintiff has not shown that it is likely that the FBI documents she seeks contain materially exculpatory information that would be of use to the Virginia defendants." *Id.* at 5. The court based this finding on the fact that the Virginia prosecutors were privy to the FBI documents and represented to the Virginia judge that they had not identified *Brady v. State of Maryland*[17] material in these files.[18]

◼ As demonstrated in *Cleaver* and *Freeman,* both of which this Court finds persuasive, a plaintiff must show (a) that s(he) is facing grave punishment, (b) that there is a reason to believe that the information produced will aid in the individual's defense, and (c) that criminal litigation is presently pending. Here, Aguilera, easily establishes the first and third requirements. If convicted, he faces a sentence of twenty-five-years-to-life, a substantial penalty by any standard, and Aguilera's hearing on his suppression motion is presently pending in a New York state court.

◼ Moreover, the plaintiff's showing on the second requirement has also been established. The cornerstone of Aguilera's defense theory is that he was mentally unstable at the time he made inculpatory statements to the police department and, as such, these statements were involuntary and should be suppressed.[19] To this end, Aguilera has offered objective proof to support his reason to believe that the FBI documents may assist in his defense. First, the FBI does not deny

---

14. This finding was based on the fact that Freeman presented the redacted version of a report that had been provided through Virginia's criminal discovery process. He also presented an unredacted version of the same report which had been released to another defendant under FOIA, a document of the type which would be released to him. The *Freeman* court found that the unredacted report contained information, while not exculpatory, but clearly relevant to the plaintiff's defense. Freeman, therefore, had made an adequate showing that the FOIA request would produce information that would assist his defense.

15. Plaintiff's FOIA request involved the review of 1,000 pages of material.

16. This opinion is listed in the Office of Information and Privacy, U.S. Department of Justice, Freedom of Information Case List (September 1994 Edition) (listing cases of "precedential significance").

17. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

18. The Court also rejected plaintiff's assertions that FBI documents showing that certain lenders to the Lyndon LaRouche Organization do not believe that they have been defrauded or expect return of their "loans" to be *Brady* material.

19. This Court will not address the issue of whether the statements should be suppressed or not, as that issue is not before this Court. Rather this Court's opinion only addresses the issue of whether Aguilera has made a sufficient showing of a reason to believe these documents will assist him in his defense.

that Aguilera was a FBI informant. In *Cleaver*, the court took notice of the fact that plaintiffs were involved in the Black Panther Party, and that the FBI had engaged in covert activities designed to injure the plaintiffs. *Cleaver*, 427 F.Supp. at 81. Hence, the court concluded that it was reasonable to believe that the FBI may have documents that could assist the plaintiff's defense. In the same vein, given the fact that the FBI does not deny that Aguilera was an informant during the early 1980's, a reasonable inference exists that the FBI may have documents that could assist in his defense.

In fact, the FBI has already released two relevant documents. The first document was a copy of a document that had been previously released during Aguilera's first murder trial in New York County, New York. The second document was a copy of a Newark airtel in which the FBI described Aguilera as "highly unreliable and unstable" and discredited his references to "subject" [20] as a "product of his imagination." Arguably, the documents released thus far lend credence to Aguilera's claimed defense theory. Further, the Supreme Court of New York County has issued two subpoenas to the FBI requesting the documents that Aguilera seeks. While the state court subpoenas are not enforceable, the issuance of the subpoenas by a judicial officer for documents that may assist a criminal defendant is a significant factor to be considered by this Court. Moreover, the Supreme Court of New York has continued Aguilera's suppression hearing until proceedings in the present case have been resolved. Furthermore, the documents requested by plaintiff are not available through the criminal discovery process via *Brady*, because the state of New York, rather than the federal government, is prosecuting plaintiff for the Manhattan murder.

Finally, the government's reliance on *Billington*, in its opposition to plaintiff's motion, is not persuasive. First, the trial judge's finding that an exceptional need had not been established in *Billington* was based on the fact that the state prosecutors, who had viewed the requested FBI documents, represented to the judge that the documents did not contain *Brady* material. No such representation has been made in the present case. Second, the plaintiff's request in *Billington* included almost 30,000 documents. Here, the government's affidavit states that only 275 documents have been identified as responsive to the plaintiff's request.

### 2. Irreparable Harm

▮ Presently, Aguilera is facing a twenty-five-year-to-life prison sentence if convicted of the Manhattan murder. The New York Court of Appeals concluded that Aguilera was improperly denied a suppression hearing by the trial court and, accordingly, remanded the case back to the trial court to conduct a suppression hearing. As Aguilera posits, the suppression hearing represents an opportunity to overturn his conviction. If the trial court concludes that his statements were voluntary and uncoerced, his conviction for the Manhattan murder will stand. *Aguilera*, 603 N.Y.S.2d at 398, 623 N.E.2d at 525. Should this occur, Aguilera's remedy would be to file a motion to vacate the judgment using the FBI documents, *whenever* obtained, as new evidence. N.Y. CRIM.PROC. LAWS § 440.10(g) (McKinney 1995). Section 440.10(g) provides that:

> New evidence [which] has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence.

*Id.* On the other hand, if the trial court decides that Aguilera's statements should be suppressed, Aguilera's conviction can then be vacated. He would then be entitled to a new trial, *Aguilera*, 603 N.Y.S.2d at 398, 623 N.E.2d at 525, where the State would have to prove beyond a reasonable doubt his guilt in the Manhattan murder case, without the use

20. *See supra* note 5.

of his statements. *People v. Valerius,* 31 N.Y.2d 51, 334 N.Y.S.2d 871, 286 N.E.2d 254 (1972).

Moreover, the FBI estimates that Aguilera's FOIA request will not be reached for approximately seven years, after a significant portion of any sentence has been served. If the documents are then released and do indeed sustain Aguilera's contentions, it would be difficult—if not impossible—to adequately ameliorate the harm he would have sustained by virtue of his incarceration for that extensive and, indeed, unwarranted period of time. Hence, the irreparable harm factor has been satisfied by plaintiff.

**3. Harmful Effect on Non Moving Party**

As the government candidly admitted at the hearing held on this case, the FBI will not endure a hardship if ordered to expedite Aguilera's request.[21] Rather, the FBI proffers that those who will be harmed are the 2,095 requestors who precede Aguilera. While the court in *Open America* referred to those requestors ahead of plaintiff as the "real parties at interest," *Open America,* 547 F.2d at 614, this Court is also mindful of these requestors and their interests. This Court is cognizant of the *Open America* court's admonition that expedition should not be granted upon a mere showing that "after a request is made, appealed, and denied, then on the face of the statute the applicant can go to court and secure, without further allegation or proof, an order placing him at the head of the line ..." *Id.* at 614. To allow such a system to occur would, as the *Open America* court noted, establish processing of requests based on the priority of filing a lawsuit—a result which would undermine the entire FOIA statute.

 At the same time, *Open America* recognized, by fashioning an exception within the exception of § 552(a)(6)(C), that certain requestors, upon an adequate showing, would

be allowed to "leap frog" to the front of the line. In this Court's view, Aguilera's case is one of these exceptional cases. Hence, in balancing the equities of Aguilera's loss of liberty versus those with less fundamental rights to be adversely impacted, the balance must tip in favor of Aguilera.

**4. Public Interest**

 As the *Cleaver* court noted "the public interest lies in assuring a complete and thorough adjudication of criminal matters." *Cleaver,* 427 F.Supp. at 82. Without the FBI documents, Aguilera will not be afforded a complete and thorough suppression hearing. The public interest is surely served here by allowing for a full adjudication of the merits of Aguilera's case.

This decision should not be read as any indication that all criminal defendants with pending FOIA requests will be allowed to "leap frog" to the front of the line. Rather, as the cases of *Cleaver, Freeman,* and *Billington* demonstrate, whether a particular FOIA requestor has established an exceptional or urgent need for the information requested requires an individualized inquiry into the facts of the case presented. All criminal FOIA cases do not warrant expedition.

The Court is satisfied that the FBI's decision to deny expedition was erroneous and must be set aside. The Court cannot think of a more compelling case, short of a death penalty case, that would require expedition. Plaintiff has demonstrated that he faces grave punishment—his reason to believe the documents may assist in his defense has been corroborated by objective proof, his request is limited in scope, and the criminal discovery process is unavailable. On the record before the Court, while the FBI has met the exceptional circumstances-due diligence test, Aguilera has made a strong showing of exceptional and urgent need in this case to fall

---

**21.** "What I'm saying and what I'm emphasizing is, we're not talking about hardship to the FBI. The FBI will be processing documents whether it's these or others, and in that sense it makes no difference ..." Government's Counsel, Tr. at 27. Moreover, as the Kloss affidavit establishes, the agency has already identified 275 responsive documents. Hence, the production of these

identified documents should not place an undue burden upon the agency. *See Electronic Privacy Ctr. v. FBI,* 865 F.Supp. 1, 2 (D.D.C.1994) (court denied defendant's motion for a stay because requested documents "have already been reviewed by FBI and do not require a new word-by-word, paragraph-by-paragraph review of the information").

within the exception to that test, and thus, to warrant an expedition of his FOIA request.

An Order consistent with this Opinion shall be entered this same day.

### ORDER

For the reasons stated in the accompanying Opinion issued this same day, it is hereby

**ORDERED** that the plaintiff's motion for a preliminary injunction is **GRANTED;** and it is

**ORDERED** that the defendant's motion for a stay of the proceedings is hereby **DENIED;** and it is

**FURTHER ORDERED** that the defendant shall comply with plaintiff's FOIA requests by no later than March 1, 1996; and it is

**FURTHER ORDERED** that the defendant shall file a *Vaughn* index for those documents for which it claims exemptions, together with a detailed justification for withholding the document or portion thereof by no later than March 1, 1996.

*SO ORDERED.*

### ADDENDUM

On May 29, 1996, the parties filed a Stipulation of Dismissal with the Court in light of the substantial disclosures the defendant made consistent with the Court's Opinion and Order.